IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


UNITED STATES OF AMERICA

vs.                                        Case Nos.:  3:10cr43/MCR/CJK
                                                       3:14cv64/MCR/CJK
ERNEST MALLETY

---

## <u>REPORT AND RECOMMENDATION</u>

This matter is before the court upon Defendant's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255.   (ECF No. 519).   The Government has filed a response (ECF No. 537) and Defendant has filed a reply. (ECF No. 551).   The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.   *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b).   After a careful review of the record and the arguments presented, it is the opinion of the undersigned that Defendant has not raised any issue requiring an evidentiary hearing and that the § 2255 motion should be denied. *See* Rules Governing Section 2255 Cases 8(a) and (b).

## PROCEDURAL BACKGROUND

Defendant Ernest Mallety and eleven others were charged in a four-count indictment with drug and weapons offenses.   Defendant was charged with conspiracy to possess with intent to distribute five kilograms or more of cocaine and 50 grams or more of cocaine base ("Count One"), conspiracy to use a communications facility to facilitate the commission of a felony ("Count Two"), and using and carrying a firearm in furtherance of a drug trafficking crime ("Count Three").[1]   (ECF No. 69).

Defendant alone exercised his right to a jury trial, represented by retained counsel James Barnes.    By special verdict, the jury found him guilty of conspiracy to distribute or possess with intent to distribute five kilograms or more of cocaine, guilty as charged in Count Two, and guilty of possession of a firearm in furtherance of a drug-trafficking crime.    (ECF No. 271).

Defendant's Presentence Investigation Report ("PSR") described him as "the primary courier" who transported cocaine from Houston, Texas, to Pensacola, Florida, for distribution by others.    (ECF No. 33, PSR ¶ 17).   Mallety in turn transported drug proceeds back to Houston, Texas.   The PSR referenced wire

---

[1] Defendant was not charged in Count Four of the indictment.

Case Nos.: 3:10cr43/MCR/CJK; 3:14cv64/MCR/CJK

intercepts in which Defendant can be overheard telling co-defendant Kevin Mallety to give him a gun, and during the debriefings it was determined that Defendant always had a firearm with him.   (ECF No. 330, PSR ¶ 141).   Defendant was held accountable for 234.79 kilograms of cocaine.   (ECF No. 330, PSR ¶ 142).   Both his base offense level and his total offense level were 38.   (ECF No. 330, PSR ¶¶ 151-160).   Defendant, who was 60 years old at the time his PSR was prepared, had no criminal history until the age of 43, and none that afforded him any criminal history points, so his criminal history category was I.   (ECF No. 330, PSR ¶¶ 163-171).   The applicable guidelines range as to Count One was 235 to 293 months; the guidelines sentence for Count Two was 48 months and Count Three required a five-year consecutive sentence by statute.   (ECF No. 330, PSR ¶¶ 208, 210).   A psychiatric evaluation was completed prior to sentencing by the Department of Veterans Affairs.   (ECF No. 409).   The court sentenced Defendant to a total term of 235 months, which consisted of 175 months as to Count One and 48 months as to Count Two, to run concurrently, followed by a consecutive term of 60 months on Count Three.   (ECF Nos. 420, 421, 456).

Defendant appealed, and the Eleventh Circuit affirmed his conviction and sentence, remanding for the correction of a clerical error in the judgment.   (ECF

Nos. 490, 493).    Defendant timely filed the instant § 2255 motion, represented by attorney William Kent, raising two claims of ineffective assistance of trial counsel. The Government opposes the motion.

## ANALYSIS

### General Standard of Review

Collateral review is not a substitute for direct appeal, and therefore the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited.    A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack.    *See* 28 U.S.C. § 2255(a); McKay v. United States, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011).    "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'"    Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).    The "fundamental miscarriage of justice" exception recognized in Murray v. Carrier, 477 U.S. 478, 496 (1986), provides that

it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . ."

The law is well established that a district court need not reconsider issues raised in a section 2255 motion which have been resolved on direct appeal. Stoufflet v. United States, 757 F.3d 1236, 1239 (11th Cir. 2014); Rozier v. United States, 701 F.3d 681, 684 (11th Cir. 2012); United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000); Mills v. United States, 36 F.3d 1052, 1056 (11th Cir. 1994). Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255.   Nyhuis, 211 F.3d at 1343 (quotation omitted).   Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised.   Sanders v. United States, 373 U.S. 1, 16 (1963) ("identical grounds may often be proved by different factual allegations . . . or supported by different legal arguments . . . or couched in different language . . . or vary in immaterial respects").

Furthermore, a motion to vacate under section 2255 is not a substitute for direct appeal, and issues which could have been raised on direct appeal are generally not actionable in a section 2255 motion and will be considered procedurally barred. Lynn, 365 F.3d at 1234-35; Bousley v. United States, 523 U.S. 614, 621 (1998);

McKay v. United States, 657 F.3d 1190, 1195 (11th Cir. 2011).   An issue is "'available' on direct appeal when its merits can be reviewed without further factual development."   Lynn, 365 F.3d at 1232 n.14 (*quoting* Mills, 36 F.3d at 1055). Absent a showing that the ground of error was unavailable on direct appeal, a court may not consider the ground in a section 2255 motion unless the defendant establishes (1) cause for not raising the ground on direct appeal, and (2) actual prejudice resulting from the alleged error, that is, alternatively, that he is "actually innocent."   Lynn, 365 F.3d at 1234; Bousley, 523 U.S. at 622 (citations omitted). To show cause for procedural default, a defendant must show that "some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [defendant's] own conduct."   Lynn, 365 F.3d at 1235.   A meritorious claim of ineffective assistance of counsel can constitute cause.   *See* Nyhuis, 211 F.3d at 1344.

Ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal.   Massaro v. United States, 538 U.S. 500, 503 (2003); *see also* United States v. Franklin, 694 F.3d, 1, 8 (11th Cir. 2012); United States v. Campo, Case 14-15541; 2016 WL 6518520 n.5 (11th Cir. Nov. 1, 2016).

In order to prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy.   Strickland v. Washington, 466 U.S. 668, 686 (1984); Williams v. Taylor, 529 U.S. 362, 390 (2000); Darden v. United States, 708 F.3d 1225, 1228 (11th Cir. 2013).   Strickland's two-part test also applies to guilty pleas.   Lafler v. Cooper, 132 S. Ct. 1376, 1384 (2012) (*citing* Hill v. Lockhart, 474 U.S. 52, 58 (1985)).   A defendant will be required to show that but for counsel's errors, he would not have pleaded guilty and would have instead insisted on proceeding to trial.   *Id.* at 1384-85 (*quoting* Hill, 474 U.S. at 59).   A defendant's "after the fact testimony concerning his desire to plead, without more, is insufficient to establish" prejudice.   Pericles v. United States, 567 F. App'x 776, 782 (11th Cir. 2014) (*quoting* Diaz v. United States, 930 F.2d 832, 835 (11th Cir. 1991)); Rosin v. United States, 786 F.3d 873 (11th Cir. 2015).   A defendant must "convince the court that a decision to reject the plea bargain would have been rational under the circumstances."   Padilla v. Kentucky, 559 U.S. 356, 372 (2010).   The Sixth Amendment right to the effective assistance of counsel extends specifically "to the negotiation and consideration of plea offers that lapse or are rejected."   In re Perez,

682 F.3d 930, 932 (11th Cir. 2012) (*citing* <u>Missouri v. Frye</u>, ─── U.S. ────, 132 S.

Ct. 1399 (2012); <u>Lafler v. Cooper</u>, ─── U.S. ────, 132 S. Ct. 1376 (2012)).   A

defendant who claims that ineffective advice led him to reject a plea offer must

show that but for ineffective assistance of counsel, he would have accepted the plea,

and that the conviction or sentence or both under the terms of the plea offer would

have been less severe than under the judgment and sentence that were imposed.

<u>Lafler</u>, 132 S. Ct. at 1385.   A defendant's insistence that he is innocent is a

"relevant consideration" that "makes it more difficult to accept his claim" that he

would have agreed to a plea deal.   *See* <u>Osley v. United States</u>, 751 F.3d 1214,

1224-25 (11th Cir. 2014).   In applying <u>Strickland</u>, the court may dispose of an

ineffective assistance claim if a defendant fails to carry his burden on either of the

two prongs.   <u>Strickland</u>, 466 U.S. at 697; <u>Brown v. United States</u>, 720 F.3d 1316,

1326 (11th Cir. 2013); <u>Holladay v. Haley</u>, 209 F.3d 1243, 1248 (11th Cir. 2000)

("[T]he court need not address the performance prong if the defendant cannot meet

the prejudice prong, or vice versa.").

In determining whether counsel's conduct was deficient, this court must, with

much deference, consider "whether counsel's assistance was reasonable considering

all the circumstances."   <u>Strickland</u>, 466 U.S. at 688; *see also* <u>Dingle v. Sec'y for</u>

Dep't of Corr., 480 F.3d 1092, 1099 (11th Cir. 2007).   Reviewing courts are to examine counsel's performance in a highly deferential manner and "must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance."   Hammond v. Hall, 586 F.3d 1289, 1324 (11th Cir. 2009) (quoting Strickland, 466 U.S. at 689); see also Chandler v. United States, 218 F.3d 1305, 1315-16 (11th Cir. 2000) (discussing presumption of reasonableness of counsel's conduct); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation"). Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight.   Strickland, 466 U.S. at 689.   To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take."   Gordon v. United States, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); Chandler, 218 F.3d at 1315.   "[T]he fact that a particular defense ultimately proved to be unsuccessful [does not] demonstrate ineffectiveness." Chandler, 218 F.3d at 1314.   When reviewing the performance of an experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect."   Id., at 1316 n.18.

With regard to the prejudice requirement, defendant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different.   Strickland, 466 U.S. at 694.   "The likelihood of a different result must be substantial, not just conceivable."   Harrington v. Richter, 562 U.S. 86, 112 (2011) (*quoting* Strickland).   For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him."   Lockhart v. Fretwell, 506 U.S. 364, 369-70 (1993); Allen v. Sec'y, Fla. Dep't of Corr., 611 F.3d 740, 754 (11th Cir. 2010).   A defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."   Lockhart, 506 U.S. at 369 (*quoting* Strickland, 466 U.S. at 687).   Or in the case of alleged sentencing errors, a defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level. Glover v. United States, 531 U.S. 198, 203-04 (2001).   A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance."   Id. at 203.

Case Nos.: 3:10cr43/MCR/CJK; 3:14cv64/MCR/CJK

To establish ineffective assistance, Defendant must provide factual support for his contentions regarding counsel's performance.   Smith v. White, 815 F.2d 1401, 1406-07 (11th Cir. 1987).   Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the Strickland test.   *See* Boyd v. Comm'r, Ala. Dep't of Corr., 697 F.3d 1320, 1333-34 (11th Cir. 2012); Garcia v. United States, 456 F. App'x 804, 807 (11th Cir. 2012) (*citing* Yeck v. Goodwin, 985 F.2d 538, 542 (11th Cir. 1993)); Wilson v. United States, 962 F.2d 996, 998 (11th Cir. 1992); Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991); Stano v. Dugger, 901 F.2d 898, 899 (11th Cir. 1990) (*citing* Blackledge v. Allison, 431 U.S. 63, 74 (1977)).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between."   Chandler, 218 F.3d at 1313.   This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted.   Dingle, 480 F.3d at 1099; Williamson v. Moore, 221 F.3d 1177, 1180 (11th Cir. 2000).   "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that

no competent attorney would have chosen it.'" <u>Dingle</u>, 480 F.3d at 1099 (*quoting*

<u>Adams v. Wainwright</u>, 709 F.2d 1443, 1445 (11th Cir. 1983)).   The Sixth Circuit

has framed the question as not whether counsel was inadequate, but rather whether

counsel's performance was so manifestly ineffective that "defeat was snatched from

the hands of probable victory."   <u>United States v. Morrow</u>, 977 F.2d 222, 229 (6th

Cir. 1992).   Regardless of how the standard is framed, under the prevailing case

law it is abundantly clear that a moving defendant has a high hurdle to overcome to

establish a violation of his constitutional rights based on his attorney's performance.

A defendant's belief that a certain course of action that counsel failed to take might

have helped his case does not direct a finding that counsel was *constitutionally*

*ineffective* under the standards set forth above.

   An evidentiary hearing is unnecessary when "the motion and files and records

conclusively show that the prisoner is entitled to no relief."   *See* 28 U.S.C. §

2255(b); <u>Rosin v. United States</u>, 786 F.3d 873, 877 (11th Cir. 2015); <u>Gordon v.</u>

<u>United States</u>, 518 F.3d 1291, 1301 (11th Cir. 2008).   Not every claim of

ineffective assistance of counsel warrants an evidentiary hearing.   <u>Gordon</u>, 518

F.3d at 1301 (*citing* <u>Vick v. United States</u>, 730 F.2d 707, 708 (11th Cir. 1984)).

To be entitled to a hearing, a defendant must allege facts that, if true would prove

Case Nos.: 3:10cr43/MCR/CJK; 3:14cv64/MCR/CJK

he is entitled to relief.   *See* <u>Hernandez v. United States</u>, 778 F.3d 1230, 1234 (11th

Cir. 2015).   A hearing is not required on frivolous claims, conclusory allegations

unsupported by specifics, or contentions that are wholly unsupported by the record.

*See* <u>Winthrop-Redin v. United States</u>, 767 F.3d 1210, 1216 (11th Cir. 2014)

(explaining that "a district court need not hold a hearing if the allegations [in a §

2255 motion] are . . . based upon unsupported generalizations") (internal quotation

marks omitted); <u>Peoples v. Campbell</u>, 377 F.3d 1208, 1237 (11th Cir. 2004).   Even

affidavits that amount to nothing more than conclusory allegations do not warrant

a hearing.   <u>Lynn</u>, 365 F.3d at 1239.   Finally, disputes involving purely legal

issues can be resolved by the court without a hearing.

   <u>Ground One</u>

   Defendant first contends that trial counsel was constitutionally ineffective

when he failed to make a "timely and specific" objection to improper opinion

testimony by Special Agent Sonya Bryant.   Defendant maintains that had counsel

objected and the court struck the testimony or not allowed it, the court "cannot be

confident beyond a reasonable doubt" that the verdict would have been the same.

   Special Agent Bryant, the case agent in this case, was the first Government

witness to testify and was ultimately recalled multiple times.   During her initial

testimony she noted that she had been a special agent with the Drug Enforcement Administration ("DEA") for over nineteen years, and had been involved in well over 500 narcotics investigations. (ECF No. 452 at 20).   A DEA investigation utilizing confidential sources, video surveillance, and a Title III wire intercept led her to Defendant Mallety.   (ECF No. 452 at 21).   Special Agent Bryant testified briefly about terminology and the general economics and practices of the cocaine trade.

The Government later recalled Bryant to provide the specifics of the investigation involving Defendant Mallety and the conspiracy charged in this case. (ECF No. 452 at 62-84, 90-106; ECF No. 448 at 10-14, 29-36; 44-56).   Special Agent Bryant testified about wiretap intercepts and the parameters within which law enforcement may listen to the phone calls of individuals who are under investigation.   (ECF No. 452 at 62-66).   During her testimony, Agent Bryant was asked to interpret, based on her training and experience, the contents of various conversations between Defendant and others.   After an objection by the defense, the Government tendered her as an expert in the area of drug distribution, terminology and distribution chains.   (ECF No. 452 at 71).   Defense counsel objected, but declined to voir dire, and the court designated Special Agent Bryant

as an expert.    Special Agent Bryant testified, for instance, that the remark "I have about 10 or 12 of them" was referring to ounces of cocaine, as were other numerical references by the conspirators, whereas a "half" referred to a half kilogram of cocaine and "nickels" and "dimes" to much smaller amounts.    (*See, e.g.,* ECF No. 452 at 71, 93, 96, 98, 101; ECF No. 448 at 31, 49, 51, 53).    Sandwich bags and wrap, according to Special Agent Bryant's training and experience, are used in the drug trade to store drugs and money.    (ECF No. 452 at 100).    A comment that "It's already measured out when they got it and all they have to do is pass it out to their customers" means that the cocaine is already packaged for resale.    (ECF No. 452 at 103).    Special Agent Bryant testified about shorthand for prices whereas Defendant's statement that he needs a dollar and a co-defendant's counter about 95 or 85 actually refers to $1,000 or $950 or $850.    (ECF No. 448 at 10).    She declined to accept defense counsel's invitation to interpret a conversation about a phone charger as actually being about cocaine.    (ECF No. 452 at 79-80).

During the second day of testimony, the Government asked Special Agent Bryant to explain what it meant when a co-defendant asked Defendant Mallety if "they got the change," and she explained that the question referred to whether law enforcement had seized all of the money during the traffic stop.    Defendant stated

during the same conversation that he had tried to let the road cool off a little bit

"cause the man, them DEAs was out bad, man."   (ECF No. 448 at 47).   Special

Agent Bryant explained that Defendant wanted to slow down the amount of times

he was traveling because drug interdiction enforcement was out on the highways.

(ECF No. 448 at 47).   At this point, the court asked counsel to approach the bench.

> During the ensuing bench conference, the court stated:
>
> I'm getting a little concerned about the testimony from her as an expert
> to some of this.   Some of this the jury doesn't need an expert to
> interpret it for them.   If it is related to drug trafficking and terms such
> as "bricks" and how they made reference to, you know, street
> vernacular for drugs, then that's one thing, but some of this I think is
> going beyond that.

(ECF No. 448 at 47-48).   Assistant United States Attorney Goldberg explained

that this was the reason that he did not qualify her as an expert, because she could

give a lay opinion on most of the topics of questioning.   Defense counsel stated

that he "was going to object to the explanation," but he never did, either before,

during, or after the bench conference. (ECF NO. 490 at 7 n.2).   The court

interjected that it was the fact that Special Agent Bryant was "giving her opinion of

the import of their conversation" that may not have been proper.   The court agreed

that the question regarding laying off and letting "the road cool down a bit" was

proper, but noted that there were "a couple of things earlier" that were not things

the jury could not have interpreted alone based on lay knowledge.   (ECF No. 448 at 48).

Defendant notes that he argued on appeal that it was plain error to admit this testimony.   The issue was subject to plain error review because trial counsel had not made an appropriate and timely objection.   The Eleventh Circuit found it did not meet the plain error standard, and Defendant now suggests that counsel was constitutionally ineffective because, had he objected, the outcome of the proceedings would have been different.   The argument is not persuasive.

To the extent Special Agent Bryant's testimony was in the vein of expert testimony, interpreting words or conversations related to the drug trade that the jurors, as lay people, presumably would not have understood, there was no error and counsel was not constitutionally ineffective for failing to object.   If her testimony was opinion testimony, not necessary for a lay person's understanding of the evidence, Defendant still has not established prejudice.   The court instructed the jury regarding the weight to give expert testimony immediately after Special Agent Bryant was tendered as an expert.   (ECF No. 452 at 72).   The court told the jurors that such witnesses are permitted to give opinions, but cautioned them

that merely because such a witness has expressed an opinion, does not mean that the jury must accept the opinion.

Furthermore, as noted by the Eleventh Circuit on direct appeal in this case, experienced drug agents may testify as experts to help a jury understand the significance of certain conduct or methods of operation unique to the drug distribution business.   (ECF No. 490 at 9, *quoting* United States v. Garcia, 447 F.3d 1327, 1335 (11th Cir. 2006)).   The court acknowledged that, although permitted, "such expert testimony may unfairly provide the Government with an additional summation by having the expert interpret the evidence and may come dangerously close to invading the province of the jury."   (ECF No. 490 at 10, *quoting* United States v. Emmanuel, 565 F.3d 1324, 1335-36 (11th Cir. 2009)). The appellate court found no plain error in the district court's failure to exclude any of Special Agent Bryant's testimony.   The court noted that her opinion about specific terms, such as numbers was appropriate expert testimony, and that her factual observation that co-defendants Hull and Jones were using Mallety to transport cocaine was merely that, a factual observation that did not go to the ultimate issue of whether Mallety had agreed to be part of a conspiracy.   Finally, the court agreed with Defendant that Special Agent Bryant at times interpreted the

meaning of entire conversations rather than specific terms.    Nonetheless, it found that in light of the volume and nature of the evidence presented at trial, the testimony did not affect Defendant's substantial rights.    The court recited the evidence against Mallety as including the testimony of numerous co-conspirators, including Mallety's own son, and recorded conversations between Mallety and numerous co-defendants in which Defendant himself discussed cocaine and described both driving from Texas to Florida and his efforts to avoid the police and federal agents.    (ECF No. 490 at 12).    Because of the abundance of evidence in the case, it concluded that Special Agent Bryant's testimony as to the meaning of the conversations was not essential to Mallety's conviction.    (ECF No. 490 at 13, *citing* Emmanuel, 565 F.3d at 1336).

     For the same reason, the undersigned concludes that counsel's failure to object to the testimony in question was not constitutionally ineffective within the meaning of Strickland.    *See* Emmanuel, 565 F.3d at 1326 ("the jury could have easily interpreted the recorded conversations as involving drugs based on other evidence in the case, including actual seizures of drugs and drug money and testimony from coconspirators").    Special Agent Bryant's testimony was not essential to Defendant's conviction, and Defendant has not shown that the outcome

of the proceedings would have been different had counsel objected thereto.    He is

not entitled to relief.

Ground Two

In his second ground for relief, Defendant contends he was denied effective

assistance of counsel due to trial counsel's failure, prior to trial, to adequately

review and explain the operation of the federal sentencing guidelines and

"substantial assistance."    Had counsel done this, Defendant contends that he

would not have taken his case to trial, but would have pleaded guilty and accepted

responsibility, thus leading to a less severe sentence.

Defendant notes that the Government tendered a proposed plea agreement

which offered him the opportunity to plead guilty in exchange for the Government's

possible filing of a substantial assistance motion.    Defendant refers to the

substantial assistance provision of 18 U.S.C. § 3553(e).    Whether he would have

been able to avail himself of this provision is questionable, however, as he might

have been in the position of the "last man standing," with no ability to cooperate

against any of the co-conspirators who had already entered pleas of guilty.

Defendant maintains that even if he did not receive a substantial assistance motion,

he would, at minimum, have received a three-level reduction for acceptance of

responsibility.    Mallety further takes the position that the court's sua sponte exercise of sentencing discretion establishes that the court would have imposed a sentence no greater than the fifteen-year minimum mandatory, comprised of ten years on Count One and five years on Count Three, rather than the total sentence of 235 months that he received.[2]

Even assuming for sake of argument that Defendant is correct that his sentence would have been lower if he had entered a guilty plea, he has not met his burden of showing prejudice because he has not shown that he would have entered a guilty plea.   Lafler, 132 S. Ct. at 1385.   The undersigned on a regular basis conducts change of plea hearings on referral from district judges.    As the undersigned regularly advises defendants, the judges in the Northern District of Florida do not accept pleas of nolo contendere.    As a result, a defendant wishing to change a plea must, as a precondition to the court accepting a guilty plea, admit his or her guilt of the conduct giving rise to the charges.    The record does not

---

[2] Defendant also asserts as part of his claim that counsel did not visit or speak with him between the time of the guilty verdict and the time he filed objections to the PSR.   (ECF No. 519 at 14; ECF No. 551 at 5).   This fact, even if true, is irrelevant to his claim that counsel did not discuss the guidelines with him before trial.   To the extent that Defendant makes a separate ineffective assistance of counsel claim based on this omission, he has not shown prejudice.

Case Nos.: 3:10cr43/MCR/CJK; 3:14cv64/MCR/CJK

support Defendant's belated and conclusory assertion that he would have been willing to do this.

The Government has submitted the affidavit of Defendant's retained attorney James R. Barnes in conjunction with its response to the § 2255 motion.   (ECF No. 537-4).   From Mr. Barnes' affidavit, it is abundantly clear that Defendant Mallety's desire to proceed to trial was paramount.   This desire was fueled by Defendant's belief, despite Barnes' advice and counsel to the contrary, that the Government could not secure a conviction in a "dry case," that is, when it had not found any drugs on his person.   Mallety also believed that the "children," meaning the other, much younger co-conspirators including his own son, would not testify against him, and as such a jury would not convict him.   Defendant told counsel at their first meeting that he had no problem with counsel representing him as long as counsel knew Defendant would "take [his] case all the way to trial," and during one meeting he threatened to fire his attorney if counsel persisted in trying to "talk [him] into" pleading guilty.   (ECF No. 537-5 at 2-3).   On one occasion, counsel brought attorney Gene Mitchell, who was representing Mallety's son, to the jail with him. Mitchell expressly told Mallety that Mallety's son was preparing to testify for the Government and against him at trial.   Even with this information, Defendant

rejected attorney Mitchell's gratuitous counsel that Defendant should plead guilty. Attorney Barnes concluded his affidavit by stating that it was his "strong personal opinion and belief that there was nothing I nor anyone else could do that would ever change Mr. Mallety's desire to go to a trial," and that he likewise believed that his client "understood the evidence against him and the basic workings of the federal guidelines, and specifically, acceptance of responsibility." (ECF No. 537-5 at 4).

Furthermore, Defendant's conduct throughout the proceedings was inconsistent with that of someone willing to admit his conduct and accept responsibility, such that the court would have accepted his guilty plea.   For instance, Defendant noted in court outside the presence of the jury that he did not want to send co-coconspirators "to prison for the rest of their life for something that I know I didn't do."   (*See* ECF No. 448 at 8).   His attorney also told the court that his client had "maintained his innocence" and still did so after trial.   (ECF No. 489 at 4).   This statement is corroborated by the PSR, which noted that Defendant proceeded to trial and maintained his innocence throughout.   (ECF No. 330, PSR ¶ 146).

Additionally, when Defendant had the opportunity to speak at sentencing, he said that the witnesses against him "lied, lied, lied."   (ECF No. 456 at 12).

Defendant Mallety stated that, as his wife had told the court, he had "never been in it," and that he got in this trouble because of his nephew or his helping people. (ECF No. 456 at 13).   As he appeared to be denying knowledge of what the "children" had done, the court reminded Defendant that his voice had been on the audio recordings that the jury heard.   (ECF No. 456 at 14).   Mallety again stated that "[his] son and them got up there and lied."   (ECF No. 456 at 14-15, 15-16). Finally, Defendant's belief in his innocence was so strong that he attempted to recover money damages in the amount of $1,800,000 per day for his unlawful incarceration and false imprisonment, as well as immediate release.   (*See* ECF No. 537-3).   In the response to the petition, the Government characterizes Defendant's claim that he would have considered entering a guilty plea, to aid the Government, as "stretch[ing] the bounds of credibility."   (ECF No. 537 at 10).   In light of the record as a whole, the Government's characterization is not exaggerated.   *See* Osley v. United States, 751 F.3d 1214, 1224-25 (11th Cir. 2014).

Defendant's suggestion that his desire to plead guilty would have been influenced by an understanding of the guidelines and the sentence he faced at trial is similarly unpersuasive.   As defendants are routinely told when pleading guilty, no one, neither their attorneys nor the court nor the Government, can foretell what

their sentence will be after entering a guilty plea.    Thus, any ballpark estimate of

a sentence would have been similar regardless of whether he entered a plea of guilty

or went to trial, except with respect to substantial assistance and the possibility of

cooperation.    Counsel's affidavit reflects that he explained the sentencing

guidelines to Defendant, including the benefit of an adjustment for "acceptance of

responsibility."    (ECF No. 537-4 at 3).    A review of the record taken as a whole

demonstrates that Defendant has not shown a violation of the standards set forth in

Strickland and its progeny, and he is not entitled to relief.

Conclusion

For all of the foregoing reasons, the court finds that Defendant has failed to

show that any of the claims raised in his motion to vacate, set aside, or correct

sentence pursuant to 28 U.S.C. § 2255 have merit.    Nor has he shown that an

evidentiary hearing is warranted.    Therefore Defendant's motion should be denied

in its entirety.

Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2255 Proceedings provides that

"[t]he district court must issue or deny a certificate of appealability when it enters

a final order adverse to the applicant," and if a certificate is issued "the court must

state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."   A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.   Rule 11(b), § 2255 Rules.

After review of the record, the court finds no substantial showing of the denial of a constitutional right.   § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483-84 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."   If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully **RECOMMENDED**:

1.   The motion to vacate, set aside, or correct sentence (ECF No. 519) be DENIED.

2.   A certificate of appealability be DENIED.

At Pensacola, Florida, this 4th day of January, 2017.

Case Nos.: 3:10cr43/MCR/CJK; 3:14cv64/MCR/CJK

*/s/ Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636**.

Case Nos.: 3:10cr43/MCR/CJK; 3:14cv64/MCR/CJK